IDA M. RICHARDSON, in equity,

*vs.*

SARAH R. RICHARDSON and others.

Hancock.  Opinion November 19, 1888.

</div>

.   *Devise.   Power of disposal by life-tenant.   Estate tail.   Construction of will in equity.*

A testator, after some minor bequests, gave the general residue of his estate to his wife, "to her use and behoof and dispose of for her maintenance during her natural life." *Held:* That her power of disposal permitted her, acting in good faith, to sell and convey an entire homestead, the bulk of the property devised to her, for the consideration of a life-support secured to her by the grantee in the deed.

In extreme cases a court of equity may interfere to prevent a wanton or reckless execution of the discretionary power of sale entrusted to a life-tenant by a testator.

The testator further devised any remainder of his estate, left at his wife's decease, to two persons named by him, to go to the survivor of them, if the other died without children, and, if both died without children, to go to the testator's grandchildren then living.   *Held:* That this is a devise of an estate tail by implication, to the two persons first named, and that they may, by our statutes, convey the title to the property by deed in fee simple.

The court has jurisdiction to determine these results, in a bill in equity, all living grandchildren, and all others interested appearing as parties to the proceeding.

ON report.

Bill in equity, brought to determine the construction of a will.   The opinion states the material facts.

*Wiswell, King and Peters*, for complainant, cited: On the jurisdiction of the court, Story's Eq. Pl. § § 77, 96 ; *Wood* v.

*Dummer*, 3 Mason, 317 ; *Crease* v. *Babcock*, 10 Met. 525, 531 ; Daniel's Ch. Pr. & Pl. p. 191 ; *Robinson* v. *Smith*, 3 Paige, 222 ; Story, Eq. Pl. § § 94, 78, 99, 105, 207, B ; *Harvey* v. *Harvey*, 4 Beav. 215 ; Story, § § 120, 116.

On the construction of the will, *Baldwin* v. *Bean*, 59 Maine, 481 ; *Ramsdell* v. *Ramsdell*, 21 Maine, 288 ; *Shaw* v. *Hussey*, 41 Maine, 495 ; *Hall* v. *Preble*, 68 Maine, 100 ; *Nash* v. *Simpson*, 78 Maine, 142 ; *Parker* v. *Parker*, 5 Met. 134 ; *Allen* v. *Trustees*, 102 Mass. 262.

*Hale and Hamlin*, for respondents, Ida M. Richardson and Sarah R. Richardson, cited : *Stuart* v. *Walker*, 72 Maine, 145 ; *Hall* v. *Preble*, 68 Maine, 100 ; *Shaw* v. *Hussey*, 41 Maine, 495, and cases there cited ; *Nightingale* v. *Burrell*, 15 Pick. 104 ; *Parker* v. *Parker*, 5 Met. 134, 139 ; *Allen* v. *Trustees*, 102 Mass. 262.

*Deasy and Higgins*, for respondents, Sarah R. Richardson and James E. Hamor, cited : *Nash* v. *Simpson*, 78 Maine, 149 ; *Stuart* v. *Walker*, 72 Maine, 146 ; *Dodge* v. *Moore*, 100 Massachusetts, 336 ; *Ayer* v. *Ayer*, 128 Massachusetts, 575 ; *Gorham* v. *Billinys*, 77 Maine, 386 ; *Whitcomb* v. *Taylor*, 122 Massachusetts, 248 ; *Downing* v. *Johnson*, 5 Coldwell, (Tenn.) 229 ; *Hoyt* v. *Jaques*, 129 Mass. 286 ; *Paine* v. *Barnes*, 100 Mass. 470 ; *Willey* v. *Haley*, 60 Maine, 176 ; *Fisk* v. *Keene*, 35 Maine, 349 ; *Roach* v. *Martin*, 27 Am. Dec. 746 ; *Arnold* v. *Brown*, 7 R. I. 196 ; *Allen* v. *Trustees*, 102 Mass. 265 ; *Parker* v. *Parker*, 5 Met. 134 ; *Wheatland* v. *Dodge*, 10 Met. 502 ; *Hayward* v. *Howe*, 12 Gray, 49 ; *Hall* v. *Priest*, 6 Gray, 18 ; *Weld* v. *Williams*, 13 Met. 486 ; *Hulburt* v. *Emerson*, 16 Mass. 241 ; *Nightingale* v. *Burrell*, 15 Pick. 104 ; *Parkman* v. *Boardman*, 1 Sumner, 359 ; *Bacon* v. *Crosby*, 4 DeG. & S. 261 ; Jarmon on Wills, 3–195 ; Washburn on R. P. 1 ; *Brightman* v. *Brightman*, 100 Mass. 238 ; *Richardson* v. *Noyes*, 2 Mass. 56 ; R. S., ch. 73, § 4.

*George P. Dutton*, for certain respondents, (grandchildren of testator) contended that it was evidently not the intent of the testator to establish an estate tail. *Richardson* v. *Noyes*, 2 Mass. 56 ; 15 Pick. 112.

As to the deed of Bethiah Richardson, conveyances made in accordance with powers, to be exercised in accordance alone, with the judgment and discretion of the life-tenant, are not to be questioned. 68 Maine, 133.

But it is also well settled that a devise like this in the will, creates a life-estate in Bethiah Richardson, with power of disposal over the remainder only when the exigencies of her support required mere disposal; and even in this case, it is incumbent on those claiming under her to show that the exigency had arisen which justified the sale, and that the conveyance was no more than reasonably adequate for the contingency. 72 Maine, 145; 68 Maine, 134.

It was the intention of the testator that the estate should go to remainder men impaired only so much as was necessary for maintenance of life-tenant. Bethiah Richardson had only a life-estate and her grantee can have no more. The burden is on grantee to show that the conveyance was justified. The deed of Bethiah confesses on its face to much more than this and is void. 68 Maine, 137; 28 Maine, 22–25; 18 Mass. 325; 34 Mass. 339.

As to the contingent interest of the grandchildren, and the nature of the conveyance to Sarah and Ida. A devise of land conveys all the estate of the testator therein, unless it appears by his will that he intended a lesser estate.

When an estate is devised in fee with a devise over, upon the happening of a certain event, the first devisee may take an estate in fee simple and conditional, and the devise over may take effect as an executory devise or he may take an estate-tail and the devise over may take effect as a remainder. Which of these results is produced, depends upon the language used. 35 Maine, 355.

Where a contingency is limited to depend on an estate of freehold is capable of supporting a remainder, it shall never be construed as an executory devise. And a devise over after an estate in fee cannot take effect as an executory devise unless the event, upon which it is to rest, must necessarily happen within a life or lives in being and twenty-one years, &c. *Duke of Norfolk's Case.*

If the clause " dying without children " referred to an indefinite failure of issue the fee simple of the first devisees would be reduced to a fee-tail and the devise over could not take effect as an executory devise, because it would be too remote, and also because it could take effect as a remainder.　5 Mass. 503.

But such is not the established construction of these words. Dying without children means children living at the death of the first devisees.　I have already commented on the intent of the testator as to these children.　Jarman on Wills, page 223, note, says, " In no case in which an estate in fee has been limited by the first words, has that estate been reduced to an estate-tail, in order to construe the words of the gift over as a remainder.　It is begging the question to say that the gift over is a remainder. It is necessary first to make out that the gift in fee is cut down to an estate-tail."

In *Morgan* v. *Morgan*, 5 Day, 517, the words used were " dying without children " held to be children living at the death of the first testator.

In 3 Halst. 29, the words " if any of the children die without issue alive such shall go to the survivors," were held to be good as an executory devise.　See also 23 Wend. 513, and 12 Wheat. 153.

In *Anderson* v. *Jackson*, 16 Johnson, 382, a leading case in New York, it was held that words " if either should die without lawful issue his share shall go to survivors," constituted an executory devise; because that was no estate-tail created by these words, but the true construction was a failure of issue living at death of first taker.　See also this case commented on in 5 Denio, 664.

In the 2nd Mass. p. 55, the doctrine contended for is upheld, and the respondents represented in this argument stand exactly as " survivors " stand in that case, and the discussions of the questions at bar in 5 Mass. p. 503, is equally in point in considering the case at bar here.

Sarah R. Richardson and Ida M. Ash, the first devisees, took as tenants in common estates in fee simple determinable upon the death of either without children, with cross limitations to the

survivor, and upon the death of both without children remainder to grandchildren by way of executory devise.

PETERS, C. J.  The questions presented for decision call for a construction of these clauses in Amos Richardson's will:

"Third.  I give and bequeath to my beloved wife, Bethiah Richardson, all the rest, residue and remainder of my property, both personal and real, of what kind and nature soever I may die possessed of to her use and behoof and dispose of for her maintenance during her natural life.

"Fourth.  I also devise that whatever property of my estate which may remain at the decease of my wife Bethiah, may be divided equally between my daughter, Sarah R. Richardson, and my granddaughter, Ida M. Ash, provided that, if either of the above named persons shall die without children, then this legacy shall go to the other, and if both die childless then the same shall be distributed equally among my grandchildren then living."

The will is dated in December, 1876.  The testator died in January, 1877.  Bethiah, his wife, died in June, 1888.  She, in 1884, conveyed by absolute deed the homestead left by the testator, his principal property, to Sarah R. Richardson, another devisee in the will, for the consideration of a life support to be furnished her by the grantee.  A bond was given by the grantee for the deed.  The deed contains a condition that, if the grantee die before the grantor the conveyance shall become thereby void.

The first question is, whether the transaction of deed and bond, the grantee surviving the grantor, was valid or void.  If the parties acted in good faith, and such must be the presumption, as nothing on the face of the transaction indicates the contrary, we think it must be pronounced to be valid.

A power to thus convey the property was conferred on the wife by the will.  The mode and manner of disposing of the property are not dictated to her.  The purpose for which it may be done is indicated.  She could dispose of a portion or all. Nothing restricts her as to the quantum of interest to be disposed of.  The testator does not provide a remainder, but only disposes of one should it exist.  In one sense the widow literally followed

the mandate of the will. She did "dispose the estate for her maintenance during her life." Her judgment governs, even though she exercises poor judgment. All rests in her own discretion.

Counsel for some of the remainder-men raises objections to such an execution of the trust. But the objections apply more against such a kind of trust, than against this mode of its execution. They were objections for the testator to have considered. He did consider, presumably, the same objections and in his own mind overruled them. He requires no bond. He creates no trustee. He places all confidence in her, having all opportunity to judge of her capacities, both mental and moral.

It is said, she should and could sell only as her wants from time to time required. That might be the judgment of some persons, but it was not her judgment, and her judgment governs. But does it follow that her judgment was not prudently exercised? She knew her situation better than we know it. It might be that she could not effect a sale in any other way. Small and poor farms will not usually sell in parcels or nibbles. She carefully provides for herself, if she should survive the grantee. But it is contended that if she could sell the property as a whole, the consideration to be received should be absolute and not contingent or conditional. We think that argument makes rather against the expediency of the transaction than its legality. The value of the land has increased since the conveyance. It might perchance have decreased. It is not alleged that it was not a fair contract between parties, but it has not resulted favorably for those interested in a remainder after her death.

It is said a fraud might easily be committed upon the remainder-man in such a transaction. The question of law is whether it was *per se* fraudulent. If the transaction were a fraudulent one in fact, both parties participating in the fraud, it could undoubtedly be avoided by other parties interested. The court could have been called upon to enjoin the conveyance or declare it void.

It is further said in opposition to the scheme which the widow

adopted, that she might be too simple-minded to be allowed to participate in so complicated and important a transaction, and that the husband could not possibly have anticipated such an unusual execution of the trust. The answer to that suggestion must be that in any extreme case the court would interfere to prevent injustice, if applied to. The power lies in the court, to be exercised in extreme cases, to take the execution of a discretionary trust from a life-tenant, and commit it to another, if the circumstances justify judicial interference. As to what might be an emergency demanding such action by the court, will be found to have been fully stated by us, in the case of *Copeland* v. *Barron*, 72 Maine, 206, 211.

It is also intimated in the argument of counsel that to defend any sale by a life-tenant, who has a power of disposal like this, it must appear that there was an emergency requiring a sale. That is impossible. If such were the rule, no man would buy at a fair price the whole or any part of the property. It would so cripple the practical use of the power to sell, as to make it in very many cases worthless to its possessor. There is no doubt that, in small estates, devises of remainders like the present are scarcely ever beneficial to anybody, and testators ought to appreciate that fact when they make them. All the risks are avoidable by placing the trust in responsible and disinterested hands. Pertinent illustrations of the views expressed by us, on the main point presented, will be found in the following cases, in addition to the case cited: *Shaw* v. *Hussey*, 41 Maine, 495 ; *Warren* v. *Webb*, 68 Maine, 133 ; *Starr* v. *McEwan*, 69 Maine, 334.

Then we come to another question, though we infer there cannot be much, if any, property that it can apply to, provided we have correctly decided the point already disposed of. The question is whether the devise under examination creates, in Sarah R. Richardson and Ida M. Ash, an estate for life or a fee simple determinable, or an estate tail ; provided a remainder exists for this part of the will to operate upon. We think an estate tail was legally constructed.

An application of plain rules to plain facts ought to produce

satisfactory results in the construction of wills. The intricacy on the subject has largely grown up from the distaste which the people and courts have for certain classes of devises. Judge CURTIS, in *Abbott* v. *The Essex Company*, 2 Curtis, (C. C.) 126, says : "I think it may be said with truth, that the American courts, while they have recognized the rule (relating to the creation of estates tail), have shown a strong disposition to lay hold on pretty slight˝expressions in the will to defeat its operation ; a tendency which has been effectually sanctioned not only in several states in this country, but in England, by legislation which abolishes the rule altogether." Now, that our statute has ameliorated the effect of the rule, by allowing any person seized of land in tail to convey it in fee simple, there need not be much difficulty in the way of bestowing upon such devises a fair and consistent construction. R. S., c. 73, § 4.

Had the devise in this case stopped with the provision made in behalf of Sarah and Ida, without a devise over to the grandchildren, it might not have been an estate tail. There are strong authorities to that effect, two of which will clearly illustrate the argument on that side of the question. *Abbott* v. *The Essex Company*, before cited ; S. C. 18 How. 202 ; *Richardson* v. *Noyes*, 2 Mass. 56. There seems to be some chafing between the latter case and some other subsequent cases in Massachusetts.

But that construction does not hold good when the latter part of the devise in the present case is taken into consideration. The whole devise makes the legal meaning too clear to admit of misapprehension. Within the Massachusetts rule, it creates an estate tail. In *Allen* v. *Trustees of Ashley School Fund*, 102 Mass. 262, it is said, " It is well settled in this Commonwealth, that, after a devise of real estate in fee, a devise over in case the first devisee shall die ' without leaving issue,' or, ' without leaving heirs of the body,' looks to an indefinite failure of issue, and therefore cannot take effect as an executory devise, but the first devise in fee is cut down by the subsequent devise to an estate tail, and the subsequent devisee takes an estate in remainder. The same rule of construction applies, when the first devise is to two persons, and the devise over, in case of the death of

either, leaving no issue, is not to the survivor, but to a stranger." In the case at bar the principle of entail is even more significantly manifested. There is a devise to two persons, and a devise over to the survivor of them, and still another devise over to other persons.

This devise comes easily within the definition of an estate tail, however differently the rule be stated in the authorities, and comes clearly within the statement of the law in *Fisk* v. *Keene*, 35 Maine, 349. The two cases are essentially alike. The definition of an estate tail created in definite and express words, is given in accurate terms by Professor Washburn, who says: "Estates tail are estates of inheritance, which, instead of descending to heirs generally, go to the heirs of the donee's body, which means his lawful issue, his children, and through them to his grandchildren in a direct line, so long as his posterity endures in a regular order and course of descent, and, upon the extinction of such issue, the estate determines." Then he describes an estate tail created by implication or construction, which is a case where a testator's meaning is not declared in express terms, but is fairly and clearly enough to be inferred from what he does say. His words imply as much as if more directly stated. He says: "An instance of an estate tail by construction, where there is no direct limitation to the heirs of the donee's body, would be an estate to A, with a proviso that if he shall die without heirs of his body, the estate shall revert to the donor or go over to one in remainder." 1 Wash. Real Prop. 5th ed. *72, *73.

The present is an implied or constructive estate tail, which is much more common than those otherwise created. It is implied that the testator designed to send the estate down to the children of Sarah and Ida, because he gives it over to others only for the reason that Sarah and Ida have no children at their decease to take the estate. He seeks to give first to the devisees and then to their children, and reserves a remainder for third parties only on the contingency that there be no children through whom the entailment can descend. The case of *Hall* v. *Priest*, 6 Gray,

18, is pertinent to this discussion, and see also, *Willey* v. *Haley*, 60 Maine, 176. It may not be amiss to say that the cases speak of devises to persons "and their heirs," and then over. Under our statutes a devise to a person, means to such person "and his heirs." R. S., c. 74, § 16.

There can be no doubt that we have jurisdiction to determine these questions. All persons in the world who can by possibility be interested are parties to the proceeding. The statute benignantly accords to the court jurisdiction to determine the construction of wills, and, in cases of doubt, the mode of executing a trust. R. S., c. 77, § 6. Being a privileged suit, the ear of the court should be open to it, to relieve parties from tedious and expensive family litigations. Especially fitting is it that we should entertain the present application, as it comes before us immediately after the decease of the widow; and the executors, and the heirs near and remote are anxious to know the condition of the estate, and who must be the recipients of its bounties.

*Bill sustained. Decree according to the opinion.*

WALTON, DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.