CALVIN R. WAUGH et als., In Equity *vs.* ELMER J. PRINCE et als.

Piscataquis.    Opinion December 23, 1921.

*A town has an implied power to defend and indemnify its officers for liabilities incurred in a bona fide discharge of their duties; otherwise when not acting in good faith.*

The bill alleges in substance that Elmer J. Prince, F. Wallace Cleaves and Walter R. Farnham, being selectmen of Sangerville, libeled one Arthur Stanley, that a civil action was brought against them, judgment recovered, and the judgment was satisfied by the defendants in the libel suit.

The town at its annual meeting held in March, 1920, voted to reimburse the selectmen, and this bill seeks to enjoin the present selectmen and treasurer from paying pursuant to said vote of the town.

*Held:*

1. We find nothing in the evidence in the instant case to justify the town, or its officers, in paying the damages and costs arising in the libel suit above mentioned.

2. It is well settled that among the implied powers of a town is that of defending and indemnifying its officers when they have incurred liability in the bona fide discharge of their duty.

3. The phrase "in good faith," as it is used in the law, simply means honesty, without fraud, collusion or deceit; really, actually without pretense.

On appeal. A bill in equity brought by plaintiffs as taxable inhabitants of the town of Sangerville, against the selectmen, treasurer, and the inhabitants of said town, seeking to enjoin the selectmen and treasurer from paying any sum, pursuant to a vote of the town, to former selectmen of the town indemnifying them for the amount paid by them in satisfaction of a judgment recovered against them in a libel suit by Arthur Stanley. The sitting Justice found the allegations of the bill to be true, and sustained the bill, and granted a permanent injunction, from which finding the defendants appealed. Appeal dismissed. Decree of sitting Justice affirmed with additional costs.

Case is fully stated in the opinion.

C. W. & H. M. Hayes, for plaintiffs.

J. S. Williams, and Fellows & Fellows, for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, MORRILL, DEASY, JJ.

HANSON, J. This is a bill in equity brought by fourteen taxable inhabitants against the present selectmen and treasurer of Sangerville, and the inhabitants of said town of Sangerville.

The bill alleges in substance that Elmer J. Prince, F. Wallace Cleaves and Walter R. Farnham, being selectmen of Sangerville, libeled one Arthur Stanley, that a civil action was brought against them, judgment recovered, and the judgment was satisfied by the defendants in the libel suit.

The town at its annual meeting held in March, 1920, voted to reimburse the selectmen for the year 1918 for the damages and costs paid by them, and this bill seeks to enjoin the present selectmen and treasurer from paying any sum pursuant to the vote of the town.

The sitting Justice found as a fact that the allegations set forth in the bill were true, sustained the bill, and granted a permanent injunction. The case is before the court on appeal.

The bill alleges, and the answer admits, that the municipal officers made the following statement in their annual report to the town:

"Arthur Stanley, larceny of culvert, $50." It is claimed by the defendants' counsel that because the town accepted the report containing the alleged libelous language, and had an interest in the report and the items comprising the contents thereof, the town had the power to appropriate funds to reimburse the former for the amount paid by them in settlement of the judgment in the libel suit, especially as the selectmen acted in good faith in making the report. The defendants urge that the only question involved in the instant case is that of good faith, and the testimony at the hearing was introduced for the purpose of establishing the good faith of the selectmen in making the report which was the subject of the suit for libel reported in *Stanley* v. *Prince*, 118 Maine, 360. The opinion in that case is decisive of the point raised here, and concludes as follows: "Moreover the attitude of the municipal officers from the beginning seems not to have been that of officials endeavoring in fairness and justice to perform their public duties, but rather that of partisans having some grudge to gratify either toward this plaintiff or Mr. Coburn. There is strong inferential evidence of actual malice, malice in fact. The speedy notification for settlement or arrest, the arrest and trial that followed with no delay, the claim of $50 for a metal culvert costing and worth about $20, the service of the civil writ therefor by arrest, instead of the usual course by summons, when so far as appears there was no pecuniary necessity therefor, the setting up of the truth in the pleadings by way of justification, *Davis* v. *Starrett*, 97 Maine, at 577, and the adherence to the same in argument, even after the Supreme Judicial Court had discharged the plaintiff from arrest under this same charge, all this reveals a persistent purpose on the part of the defendants to harrass and humiliate the plaintiff with respect to a matter which in itself and as among broad-minded business men would be regarded as trivial. It was a case therefore in which punitive damages might well be awarded if the jury saw fit to grant them." There was absence of good faith shown in that case and we find nothing in the evidence in the instant case to warrant a conclusion that an injustice has been done in *Stanley* v. *Prince*, supra, or to justify the town, or its officers, in paying the damages and costs arising in the libel suit above mentioned.

It is well settled that among the implied powers of a town is that of defending and indemnifying its officers when they have incurred liability in the bona fide discharge of their duty. Cooley Const.

Limitations, Page 306; *Nelson* v. *Milford*, 7 Pick., 18, 23. See also *Baker* v. *Windham*, 13 Maine, 74; *Fuller* v. *Groton*, 11 Gray, 340.

The phrase "in good faith," as it is used in the law, simply means "Honestly, without fraud, collusion or deceit; really, actually, without pretense." Words and Phrases, 3117.

In *Fuller et als.* v. *Inhabitants of Groton et als.*, 11 Gray, 340, a petition in equity to restrain the respondents from paying and indemnifying the school committee of Groton for the expenses incurred in defending a suit brought against them for an alleged libel contained in one of their official reports, it was held "that towns have power to raise money to indemnify their officers against liabilities incurred or damages sustained in the *bona fide* discharge of their duties, is now well settled." In that case, however, the circumstances were in no respect like the instant case. There the report under consideration, while stating their conclusions forcibly and leaving no room for doubt as to their meaning, contained no libelous words. In the libel suit underlying this case the officers did use libelous words and this court has so held. In *Fuller* v. *Groton*, supra, the subject of the vote of the town was expenses incurred in defending a groundless suit; here the vote includes not only expenses, but damages paid in a suit for libel, where the town officers were guilty of libel. In the former the school committee were acting in good faith in the performance of a legal duty. Here it must be held that from the very nature of the case, the selectmen were not acting in good faith. It was not an act of good faith to add to the list of assets of their town libelous words concerning any person. There was no necessity in accounting for the possession or absence of a culvert to add libelous words concerning the plaintiff in the libel suit. The use of libelous words were in no manner called for by the requirements of law in making a report. There were other words available for purposes of identification of the culvert, if any were needed at all. In any event the town was not interested in the description of the culvert adopted by the defendants in that action, and it matters not that the town voted to accept the report. Neither the vote accepting the report, nor the vote to reimburse the defendants, can make the town liable for the illegal act of the town officers in placing the libelous words in their report.

A town is not liable for the negligent acts of its public officers committed in the performance of their public duties, unless such liability is created by statutory provisions. 26 R. C. L., Page 807; *Brown* v.

*Vinalhaven*, 65 Maine, 402.   It is not liable for the unauthorized and illegal acts of its officers even when acting within the scope of their duties; nor for their nonfeasance, misfeasance or malfeasance respecting their legal duties, but it may become liable when the acts complained of were illegal but done under its direct authority previously conferred or subsequently ratified.   26 R. C. L., Page 807; *Seele* v. *Deering*, 79 Maine, 343.   In *Bulger* v. *Eden*, 82 Maine, at Page 357, the court say, "the liabilities of municipal corporations for the torts or negligent acts of their officers are fixed by statute.   They are to be held liable for the negligence or misconduct of their officers only when made so by express statute, or the act out of which the claim originates was within the scope of their corporate power, and was directly and expressly ordered by the corporation."   There is no pretense that publishing the libel in question was ordered by the town in its corporate capacity, or was later ratified by a vote of the inhabitants.   In *Brown* v. *Vinalhaven*, 65 Maine, 402, it is held that the liability of a town upon contracts made within the scope of its authority, about the affairs of the town by such of its officers as are also its agents is unquestionable.   But its responsibility for the torts or neglects of its officers in the performance of duties imposed upon them by law has never been affirmed, unless created by express statute provisions. On the contrary, the distinction between "corporations created for their own benefit" and "quasi corporations created by the legislature for purposes of public policy" in respect to their liability for such wrongs and neglects, was long since declared in our parent commonwealth in the case of *Mower* v. *Leicester*, 9 Mass., 247, and we believe has never been overlooked by our own court.   See *Mitchell* v. *Rockland*, 52 Maine, 118.

We are of opinion that the findings of fact by the sitting Justice are supported by the evidence, and the decree being in accord with the facts must stand unreversed.   The decision of a single Justice upon matters of fact in an equity hearing will not be reversed unless it clearly appears that such decision is erroneous; and the burden to show the error is upon the appellant.   *Hartley* v. *Richardson*, 91 Maine, 424.

> *Appeal dismissed.*
> *Decree of sitting Justice affirmed*
> *with additional costs.*