Jay PHILOON, Personal Representative
of the Estate of Edith Philoon

v.

Shirley VARNEY.

Supreme Judicial Court of Maine.

Argued June 2, 1986.
Decided Sept. 11, 1986.

Cloutier, Joyce, Dumas and David, P.A., Edward H. Cloutier (orally), John C. McCurry, Livermore Falls, for plaintiff.

Fales & Fales, P.A., Andrew B. Choate (orally), Roscoe H. Fales, Lewiston, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, and SCOLNIK, JJ., and VIOLETTE, A.R.J.*

GLASSMAN, Justice.

The defendant, Shirley Varney, appeals from the judgment of the Superior Court, Androscoggin County, declaring void a deed to her from a life tenant. Varney contends, *inter alia*, that the Superior Court erred in construing a provision in a will that granted the life tenant the power to dispose of the property. For reasons hereinafter set forth, we vacate the judgment and remand for entry of judgment in favor of Varney.

### I

Almon D. Lawrence devised property to several named beneficiaries including his wife, Wanda K. Lawrence, and his daughter, Edith O. Philoon. The meaning of the sixth paragraph devising the "homestead" is in dispute in this case. This paragraph provides:

> I give, devise and bequeath the land and buildings comprising my homestead together with all the furniture, furnishings and other personal property used in the operation of a home to my wife, WANDA K. LAWRENCE, to be held by her during the term of her natural life. *I specifically authorize my said wife during her lifetime to trade, sell or mortgage any part of [sic] the whole of said property or to consume the same for her confortable support and care.* Upon her death *whatever shall remain of the original property and whatever proceeds or substitute property then remains,* I give, devise, and bequeath to my daughter, EDITH O. PHILOON, in fee. (Emphasis added).

In April, 1981, Mrs. Lawrence orally agreed to deed land comprising a part of the homestead to Shirley Varney in exchange for Varney's agreement to care for her. Varney had known Mrs. Lawrence for approximately 30 years and rendered assistance to her during the last eight years of her life. Following the oral agreement of April, 1981, the scope and frequency of these services increased. Varney did car for Mrs. Lawrence from mid-April to

* VIOLETTE, A.R.J., sat at oral argument as Associate Justice, but retired prior to the preparation of this opinion. He has joined in the opinion as an Active Retired Justice.

December 20, 1981, and from April 18 to June 5, 1982. On June 23, 1982, while hospitalized with a terminal illness, Mrs. Lawrence executed the deed to Varney. The Superior Court found that "[t]he Deed was prepared, a description provided, executed and filed at the initiative of Shirley Varney." Mrs. Lawrence died one week later.

Edith Philoon[1] brought suit, seeking a rescission of the deed on the ground that the conveyance was without consideration and not required for Mrs. Lawrence's "comfortable support and care," and was therefore fraudulent. The Superior court did not find fraud, but found that Varney had indeed provided services to Mrs. Lawrence. The court further found that Mrs. Lawrence had sufficient assets and means other than the homestead to provide for her support and care, and therefore that it was not necessary for her to alienate any part of the life estate. The court ruled that the conveyance violated the provisions of the will and was therefore void. The instant appeal ensued.

## II

To determine the scope of the authority granted to Mrs. Lawrence under the terms of the will, we examine the language of the will in light of the fundamental principle that "[t]he intention of a testator as expressed in his will controls the legal effect of his dispositions." 18-A M.R.S.A. § 2-603 (1981). *See also In re Estate of Thompson*, 414 A.2d 881, 887 (Me.1980).

■ The first sentence of the sixth paragraph devised a life estate in the homestead to Mrs. Lawrence. In addition, by means of the second sentence the testator specifically authorized Mrs. Lawrence to trade or sell any part or the whole of the property or to consume it for a stated purpose: "her comfortable support and care." Whereas some testators have limited the power granted a life tenant to consume or dispose of the life estate to *what is necessary* for that life tenant's support,[2] the will in question here has no such limitation. The Superior Court erred in reading a requirement of necessity into the will. In the instant case, as in *Richardson v. Richardson*, 80 Me. 585, 16 A. 250 (1888), "the widow literally followed the mandate of the will." *Id.* at 589-90, 16 A. at 251. Mrs. Lawrence "trade[d] [or] s[old] ... part ... of said property ... for her comfortable support and care." Any objection that her power of disposition should be limited to what was *necessary* for her support is an objection against the power itself, not against her exercise of it. Almon Lawrence as testator presumably considered and overruled that objection. *See Richardson*, 80 Me. at 590, 16 A. at 251. Thus the Superior Court read into the life tenant's power of disposition a requirement of necessity that was at odds with the clearly expressed intention of the testator. *See Loud v. Poland*, 126 Me. 45, 136 A. 119 (1927); *Young v. Hillier*, 103 Me. 17, 67 A. 571 (1907); *Small v. Thompson*, 92 Me. 539, 544-45, 43 A. 509, 511 (1899); *Hall v. Preble*, 68 Me. 100 (1878).

■ Indeed, even if the will limited the life tenant's power of disposition to what was necessary for her support, her judgment as to the necessity governs unless the party challenging the exercise of the power proves fraud. *Compare Loud*, 126 Me. at 46, 48, 136 A. at 119-20 (will requires life tenant "not to make unnecessary waste or use" of estate, but she is "the judge of the necessity") *with Richardson*, 80 Me. at 589-90, 16 A. at 251 (no limitation in will; the court holds that the life tenant's "judgment governs, even though she exercises

1. Edith O. Philoon died on June 7, 1984, and Jay Philoon, Personal Representative of Edith's estate, is substituted as party plaintiff.

2. *See, e.g., Loud v. Poland*, 126 Me. 45, 46, 136 A. 119 (1927) ("have the use and custody of [the estate] but not to make unnecessary waste or

use thereof"); *Haseltine v. Shepherd*, 99 Me. 495, 496, 59 A. 1025, 1026 (1905) ("if needed for her support and benefit"); *Hall v. Preble*, 68 Me. 100, 101 (1878) (may expend entire estate "if necessary, for her care, comfort and support").

poor judgment"). Since the plaintiff in the instant case failed to prove fraud, the Superior Court could not substitute its judgment for that of the life tenant in the exercise of the power granted her by the will. *See Loud,* 126 Me. at 48, 136 A. at 120.

■ These conclusions are underscored by an examination of the third sentence of the sixth paragraph. Any claim that the plaintiff has to the homestead rests on this sentence. While it grants a remainder interest to Edith Philoon, the sentence also grants to the life tenant a power to dispose of the property. Under the settled law of this state the words—"whatever remains" —or other words of similar import, when added to a devise of a life estate, implies a power in the life tenant to dispose of the property unless such power is limited or negated by other language in the will or unless such construction is plainly contrary to the intent of the testator. *Stewart v. Estate of Stewart,* 148 Me. 421, 426–29, 94 A.2d 912, 914–16 (1953); *Loud,* 126 Me. at 47, 136 A. at 120; *Young,* 103 Me. at 20–21, 67 A. at 572; *Warren v. Webb,* 68 Me. 133, 136–37 (1878); *Shaw v. Hussey,* 41 Me. 495, 499–503 (1856); *Ramsdell v. Ramsdell,* 21 Me. 288, 296 (1842). Here the will does not limit the implied power of disposition except for the limitation provided under the second sentence that any disposition of the homestead be for Mrs. Lawrence's "comfortable support and care." Under the third sentence alone Mrs. Lawrence had the power to dispose of the entire homestead and to divest or cut off the remainder. *See Loud,* 126 Me. at 45–48, 136 A. at 119–20; *Young,* 103 Me. at 21, 67 A. at 572 (the words "whatever may remain" gives the life tenant the power to sell the estate "if she wished or needed"); *Shaw,* 41 Me. at 501–503. Thus the third sentence of the sixth paragraph, itself the sole basis for the plaintiff's claim, does not limit the second sentence, but simply reemphasizes Mrs. Lawrence's power to dispose

of the homestead according to her own judgment.

The plaintiff contends, however, that by her conveyance to Varney Mrs. Lawrence violated a fiduciary obligation to the remainderman. We have recognized that a life tenant is a quasi-trustee for the remainder interests. *Wiktorowicz v. Haley,* 251 A.2d 794, 796–97 (Me.1969); *Mallett v. Hall,* 129 Me. 148, 153–54, 150 A. 531, 534 (1930). Even under a pure trust, however, a trustee cannot be faulted for administering the trust in accord with its exact terms. *See Restatement (Second) of Trusts* § 169 (1959) (duty to administer trust), § 186 (trustee to exercise the powers specifically conferred on him by the terms of the trust, or necessary or appropriate to carry out its purposes); G. Bogert, *The Law of Trusts and Trustees* § 541 at 154–55 (1978) ("A fundamental duty of the trustee is to carry out the directions of the testator or settlor as expressed in the terms of the trust."). In the instant case Mrs. Lawrence cannot be faulted for exercising the power of disposition in accord with the exact terms of the will. The will granted her the power to dispose of all or part of the homestead so long as she acted for "her comfortable support and care." She chose to convey a portion of the property in exchange for personal services. The court has no power to undo this transaction by rewriting the will.[3]

Because the plaintiff failed to establish any basis for the court to set aside the conveyance, we vacate the judgment and remand for entry of judgment in favor of Varney.

The entry is:

Judgment vacated. Remanded for entry of judgment for the defendant.

McKUSICK, C.J., ROBERTS, WATHEN, SCOLNIK, JJ., and VIOLETTE, A.R.J., concurring.

---

**3.** *Cf. Babb v. Rand,* 345 A.2d 496, 498 (Me.1975) ("The Court must not rewrite the will to conform to its own notions as to the suitability of the bequest.").

NICHOLS, Justice, dissenting.

Today's majority reaches a result plainly contrary to the intent of the testator who, as the Superior Court found, wanted to pass this property on to his daughter after the death of his second wife. I must respectfully dissent.

Wanda Lawrence, the stepmother here, owes to her remainderman, Edith Philoon, "the highest duty to act honorably and in good faith." *In Matter of Estate of Harry L. Kreie,* 235 Kan. 143, 679 P.2d 712, 719 (1984). Often the life tenant is described as the "quasi-trustee for the remainder interests." *Wiktorowicz v. Haley,* 251 A.2d 794, 796–97 (Me.1969); *Hardy v. Mayhew,* 158 Cal. 95, 105, 110 P. 113, 117 (1910).[1] So long as the life tenant acts in good faith in conveying the property she does not "transcend her authority." *Hoxie v. Finney,* 147 Mass. 616, 18 N.E. 593, 594 (1888). As used in law the phrase "in good faith" means honestly, without collusion or deceit, without pretense. *Waugh v. Prince,* 121 Me. 67, 70, 115 A. 612, 614 (1921).

The life tenant's exercise of the broad power granted her by will must be founded upon a reasonable judgment, having due regard for the rights of those whose interests may be injuriously affected by its exercise. *Lovett v. Farnham,* 169 Mass. 1, 47 N.E. 246, 247 (1877).

Central to this controversy is the fact expressly found by the Superior Court, and amply supported by the record, that Wanda Lawrence's deed to her close friend of some forty acres of the homestead in Turner was given "to defeat the intent of Almon Lawrence." Further, the court expressly found that the stepmother had sufficient assets and independent means to provide for her comfortable support and care.

Moreover, the record is replete with evidence of her animosity toward Edith Philoon.[2]

Therefore, I cannot join today's majority when the Court so blithely brushes aside the stepmother's duty as a fiduciary and absolves her of any breach of the requirement of good faith while condoning the stepmother's conveyance to her close friend "in trade for" services already rendered by the friend. Thus Mrs. Lawrence contrived to defeat the clear intent of her late husband to pass this property upon her death to his daughter, Edith Philoon.

This is a case, I submit, where we should follow the logic of a line of cases highlighted by *Stocker v. Foster,* 178 Mass. 591, 60 N.E. 407, 409 (1901). There the grantee under a life tenant's deed stressed the latter's broad powers to sell and dispose of the estate just as today's majority is emphasizing similar language in the Almon Lawrence will, but the Massachusetts court refused to rule that the power given in the will was an unlimited power to sell and dispose of the property. The life tenant's "comfort" for which that will provided was his physical comfort, declared the court, and not the perverse satisfaction he might find in doing another out of his legacy.

For the same reason in another case the Iowa court held that where a will authorized the life tenant at any time and to any extent to dispose of the property for her comfort, enjoyment and happiness, the life tenant was not justified in conveying the property because of a desire to deprive the remainderman of his interest in the property. *Watkins v. Dean,* 243 Iowa 599, 52 N.W.2d 498, 500 (1952). *See also Lovrien v. Fitzgerald,* 242 Iowa 1258, 1264–65, 49

---

**1.** It is not a pure trust because it exists only in the sense that the duty rests upon the life tenant to have due regard for the rights of the remainderman and not to injure or dispose of the property to the latter's detriment. *Mallett v. Hall,* 129 Me. 148, 153–54, 150 A. 531 (1930).

**2.** As we look to the four corners of the instrument to determine the testator's intent, *In Re*

*Estate of Thompson,* 414 A.2d 881, 887 (Me. 1980), we observe that the same paragraph of the will which devised the remainder interest to his daughter provided that she should have "whatever proceeds or substitute property then remains." Certainly, it cannot be said of this widow that she exercised her power "in accord with the exact terms of the will."

N.W.2d 845, 848 (1951) (life tenant's exercise of power must be in good faith).

By similar reasoning in still another case the Ohio court found a widow, as life tenant, to be a quasi-trustee for those in remainder, and a third party acquiring the property by collusion with her to the injury of those in remainder was found to hold the same as a trustee for them.

> The testator, having so amply provided for the support of his wife, evidently contemplated good faith on her part toward [the remaindermen]. He therefore gave her the right to consume, but not to recklessly squander or give away the estate.

*Johnson v. Johnson,* 51 Ohio 446, 461, 38 N.E. 61, 64–65 (1894).[3]

In none of these three cases was relief conditional upon a showing of fraud.

True to the teaching of *Restatement, Restitution* § 168(1) (1937) and *Restatement, Trusts, 2d* § 288 (1959),[4] in the case before us, the Superior Court's finding of a bad motive was tantamount to the finding of a breach of good faith by the stepmother. Thus the court concluded that this breach voided the conveyance of most of the acreage to her close friend.[5] Today's majority forsakes that teaching. Indeed, it breaks a new trail that fails to impose any good faith requirement whatsoever on the life tenant. The majority's error is in gazing at the periphery of the stepmother's discretion when the majority should instead have been focusing on the duty she owed

Edith Philoon, a duty that significantly narrowed the scope of her discretion under this will.

I would affirm the judgment of the Superior Court.

---

**3.** *Cf. Windscheffel v. Wright,* 187 Kan. 678, 360 P.2d 178 (1961) (the life tenant who had deeded property to her spouse held to occupy a fiduciary relationship to the remaindermen, and conveyance was void); *Lord v. Roberts,* 84 N.H. 517, 153 A. 1, 4 (1931) (life tenant's judgment not reviewable if he acted in good faith); *Callihan v. Russell,* 66 W.Va. 524, 66 S.E. 695 (1909); *Cales v. Dressler,* 315 Ill. 142, 146 N.E. 162, 164 (1924) (subterfuge not permitted to defeat testator's intention); 1 Tiffany, *Law of Real Property* § 7 (1939).

**4.** Comment (a) to § 288 is analogous and pertinent to the problem before us:

> The interest of the beneficiary in the trust property is not cut off by a transfer by the

trustee in breach of a trust to a third person who at the time of the transfer has notice that the transfer is in breach of trust, although he paid value for the transfer; and the beneficiary can in equity compel the third person to restore the property to the trust. The third person holds the interest which he acquires by the transfer upon a constructive trust for the beneficiary of the trust.

**5.** If the Superior Court read a requirement of necessity into the stepmother's power to convey it was at most harmless error after that Court had found her conduct to be equivalent to a breach of good faith and for that reason voided the conveyance.