BLANCHE B. MALLETT *vs.* CHAUNCEY A. HALL.

Kennebec.        Opinion May 27, 1930.

*Harvey D. Eaton,* for plaintiff.
*Locke, Perkins & Williamson,* for defendant.

SITTING: DUNN, STURGIS, BARNES, JJ., PHILBROOK, A. R. J.

STURGIS, J.   Appeal in equity from decree of single Justice dismissing the Bill with costs.

Everett S. Hall, late of Augusta, Maine, died March 1, 1917, testate, leaving a widow, Cora M. Hall, and, as his sole heirs at law, Emile B. Hall, a brother; Ida B. Williams, a sister; Omar A. Hall, a nephew; and Chauncey A. Hall, the defendant, also a nephew. The estate of the decedent consisted of a house and a lot on Sewall Street in Augusta, a camp and lot in Vassalboro, and personal property of an additional value of $5,497.97. The value of the real estate does not appear.

After the payment of his debts, funeral charges, and expenses of administration, Mr. Hall disposed of his entire estate as follows:

"I give, bequeath and devise unto my beloved wife Cora M. Hall, all my estate, real, personal or mixed, wherever situated during her life and she is hereby given full power and lawful authority to use so much of said estate and proceeds thereof as is necessary for her support and maintenance whereof she is to be the sole judge and said estate and proceeds thereof shall vest in her absolutely for that purpose but in case there remains any of said estate or proceeds thereof at her death I desire to have the same go to my legal heirs."

The widow, Cora M. Hall, was named executrix in the will, and letters testamentary issued to her on April 9, 1917. She did not settle the estate or file an account of her administration in the Probate Court.

July 15, 1922, Ida B. Williams joined with her brother, Emile B. Hall, in executing and delivering to Cora M. Hall a quitclaim deed of their right, title and interest in the lands in Augusta and Vassalboro owned by Everett S. Hall at his decease, stating in the deed an intention "to release all present or future right, title or interest that we may have in the foregoing described parcels of land

which we may have acquired or might in the future acquire under the will of said Everett S. Hall, late of Augusta, Maine, deceased, or otherwise." On the same day, Mrs. Williams and Emile B. Hall released and assigned to Cora M. Hall all their present and future right, title and interest in the personal property belonging to the estate. Mrs. Williams received no consideration for her execution of the deed of release or the assignment. The transactions were neither more nor less than gifts of her rights in remainder to the holder of the life estate.

Ida B. Williams died May 29, 1925. In her will Blanche B. Mallett, the plaintiff in this action, was made residuary legatee and devisee, and is named executrix.

Cora M. Hall died October 26, 1927, testate, bequeathing and devising all her estate, after payment of debts, funeral charges and expenses of administration, to Chauncey A. Hall, the defendant.

The plaintiff Appellant now brings this Bill to cancel the deed and assignment made by her mother, Ida B. Williams, on July 15, 1922, alleging that the execution of both instruments was procured by fraudulent representations (1) as to the value of the interest of Ida B. Williams in the estate of Everett S. Hall, (2) that other parties interested in remainder had already released their interests under the will to Cora M. Hall, or were about to do so, without consideration, and (3) that the execution of the instruments without consideration was procured by the undue influence of Cora M. Hall and the defendant, Chauncey A. Hall. The defendant, in his Answer, denies all allegations of fraud and undue influence.

Under the will of her husband, Cora M. Hall was devised a life estate with power of disposal. Under the power, she had a right to the possession of the principal of the estate as well as the income, and, if and as necessary for her support and maintenance, could lawfully sell it and use the entire proceeds. *Loud* v. *Poland*, 126 Me., 45; *Young* v. *Hillier*, 103 Me., 17; *McGuire* v. *Gallagher*, 99 Me., 334; *Stuart* v. *Walker*, 72 Me., 145; *Hall* v. *Preble*, 68 Me., 100. Whatever remained of the estate at her death passed to the heirs of the testator who were secondarily entitled by way of remainder. *Stuart* v. *Walker*, supra; *Gorham* v. *Billings*, 77 Me., 386.

When the deed and assignment in controversy were given, Cora M. Hall, the life tenant, had undoubtedly been in possession of the life estate for more than five years. Although she was executrix of her husband's will, she then held title to the real estate under her devise and not in her capacity as executrix. *Connolly* v. *Leonard,* 114 Me., 29, 32; *Burgess* v. *Shepherd,* 97 Me., 522, 526; *Marr* v. *Hobson,* 22 Me., 330. We think this must be held true also as to the personal property. At the death of Everett S. Hall, the title to his personal property vested in his widow in her capacity as executrix with a vested right in her, as life tenant, to so much of the personal estate as remained after administration. *Whiting* v. *Farnsworth,* 108 Me., 384, 388; *Sprowl* v. *Randell,* 108 Me., 350, 352; *Mace* v. *Mace,* 95 Me., 286. But when an executor is also legatee, no formal act is necessary to vest title to the legacy in him as an individual if distribution in fact be otherwise manifested by the circumstances. 2 Schouler on Wills, Sec. 1249; 24 C. J., 471. Although formal receipt or accounting evidencing such a distribution is lacking, we think the facts proven warrant the inference that distribution had been in fact made.

In so far then, as the relations of Cora M. Hall and Ida B. Williams at the time the deed and assignment in question were executed affect the validity of the gifts here in controversy, they must be looked upon as those of life tenant and remainderman, except as the power annexed to the life estate permitted user and consumption of the corpus of the estate. The legal and equitable rights and liabilities of the parties to the gifts and of the parties to this action must be determined accordingly.

It is a general rule that any person of legal age, having a mental capacity to understand the nature of the transaction, may be the donor of property of which he is the legal or equitable owner. The law favors every man's right to dispose of his property as and when he will, and while gifts are always to be closely scrutinized by the courts and must be supported by satisfactory and convincing evidence, they are as fully protected by law as a transfer for a valuable consideration. A gift consistent with the law will not be set aside because the donor or his privy in interest regrets the transaction or the court may regard the gift improvident or un-

deserved. Equity will not set aside a voluntary conveyance except in case of fraud, actual or constructive. *Stover* v. *Poole*, 67 Me., 217.

Fraud is never presumed; it must be proved. And in suits to set aside a gift on the ground of fraud, the rule supported by the weight of authority is that, if no confidential relation exists between the donor and donee, the burden is on the person attacking the gift to show its invalidity. In the absence of evidence raising suspicion of fraud or undue influence on the part of the donee, the fairness of the gift will be presumed. *Towson* v. *Moore*, 173 U. S., 17; *Vandor* v. *Roach*, 73 Cal., 614; *Kimmel* v. *Berresheim*, 173 Ky., 734; *Jenning* v. *Rohde*, 99 Minn., 335, 339; *Wertheimer* v. *Baum*, 111 N. Y. S., 18; *Yeakel* v. *McAtee*, 156 Pa. St., 600.

Where, however, a confidential relation exists between the donor and donee at the time of the gift, the burden of proof is on the donee to show the absolute fairness and validity of the gift, and that it is free from the taint of undue influence or other fraud. Among the numerous cases supporting this rule are, *Hoghton* v. *Hoghton*, 15 Beav., 278; *Kimmel* v. *Berresheim*, supra; *Gibson* v. *Hammang*, 63 Neb., 349; *Sears* v. *Shafer*, 1 Barb. (N. Y.), 408; *Leibert* v. *Hoffman*, 105 N. Y. S., 337; *McConville* v. *Ingham*, 268 Pa. St., 507. See also 12 R. C. L., 972; 28 C. J., 670, and cases cited.

The foregoing rules as to the burden of proof are but a specific application to gifts of the rule stated in *Burnham* v. *Heselton*, 82 Me., 495, 499 *et seq.*, recently affirmed in *Eldridge* v. *May*, 129 Me., 112.

The contention of the Appellant is that the relation of a life tenant to his remainderman is, as a matter of law, a confidential relation which compels a presumption of the invalidity of a gift from the remainderman to the tenant, casting the burden of proof of the validity of the gift upon the donee. We are not convinced that the relation itself effects this result. It is generally accepted that the relation of a life tenant to his remainderman is that of a *quasi* trustee. The relation is the same if a power of disposal is annexed to the life estate. *Pierce* v. *Stidworthy*, 79 Me., 234, 242; *Hardy* v. *Mayhew*, 158 Cal., 104; *Johnson* v. *Johnson*, 51 Ohio St., 446; *Smith* v. *Van Nostrand*, 64 N. Y., 278.

It has been convincingly pointed out, that the life tenant is a

154

trustee for the remainderman only in a limited sense. The trust is not pure but only *quasi*. 2 Perry on Trusts, Sec. 540. The life tenant is a trustee for the benefit of the remainderman only in the sense that the duty rests upon him merely to have due regard for the rights of those in remainder. *Hardy* v. *Mayhew*, supra. The relation is in the nature of a trust. *Smith* v. *Daniel*, 2 McCord Ch. (S. C.), 143. The life tenant holds the corpus of the estate in trust in the sense that he must exercise reasonable precautions to preserve the property intact for transmission to the remainderman at the termination of the life estate, and may not injure or dispose of it to his detriment. *Gibson* v. *Brown*, 62 Ind. App., 460. And it is held that no such fiduciary relations exist between a life tenant and his remainderman as to make applicable to their transactions the rules of equity which govern trustees and *cestuis que trustent*, and preclude the life tenant from acquiring by gift or purchase from the remainderman his estate in remainder. *Ware* v. *Frank's Admr.*, 18 Ky., Law Rep. 1009; 38 S. W., 1061. The restricted sense of the term trust, as applied to this relation, is also recognized in *Clark* v. *Leaverett*, 159 Ga., 487 ; *Green* v. *Green*, 50 S. C., 514; Note 137 Am. St. Rep., 653 ; 17 R. C. L., 626 ; 21 C. J., 941.

We are of opinion therefore that, to warrant the application of the confidential relation rule as to burden of proof in the case of a gift from a remainderman to the tenant for life, something more than the mere relation itself must be proved. A confidential relation in fact must be established.

The Appellant's testimony, in substance, is that Mrs. Hall, the life tenant, accompanied by the defendant, called on Mrs. Williams a few days before July 15, 1922, and asked her to release her interests in remainder in the estate of Everett S. Hall. As to the value of this remainder, the only statement attributed to the widow is that the power of disposal annexed to the life estate made it probable that little, if any, of the property would be left at the widow's decease. The witness says her mother, at that time, agreed to release her interests in remainder if the others interested in the estate did the same, and a few days later joined in the execution of the deed and assignment in controversy, which had been already signed by Emile B. Hall, a brother and remainderman of equal interest.

The defendant confirms this discussion regarding the consumption of the life estate under the power, but asserts that the only condition attached to the agreement of Mrs. Williams to release to the widow was that the brother, Emile B. Hall, should sign, it being fully understood that the other remaindermen, by reason of minority, could not sign. He says the brother's execution of the deed of release and the assignment was without consideration, and no representations as to the others signing were made. The truth of the statements of the defendant as to these matters was evidently accepted by the Justice hearing the cause. No sufficient reason appears for rejecting it on this review.

Nor is it established that the gifts were procured by the undue influence of the widow or the defendant. The parties to this gift were, so far as the record discloses, women of mature years and in full possession of their faculties. As widow and sister of the testator, their relations were friendly before and after the gifts were made. There is no convincing evidence of superior intellect or will on the part of the one or the other; nor of trust reposed or confidence abused. The widow, for her own benefit and perhaps ultimately for the benefit of the defendant whom she and her husband had reared from infancy, solicited from her sister-in-law a gift of the latter's outstanding interest in remainder. The sister-in-law, on this record equally competent to manage her own affairs and determine the propriety and advisability of surrendering by gift her interests in remainder in the estate in which they were both interested, with ample opportunity for deliberation, made the gifts, continued in friendship with the donee and in her lifetime raised no question as to the fairness or validity of the transaction. The fact that the donor had no legal advice must be carefully considered, but, in the light of the circumstances attending this gift, it does not prove fraud.

Family settlements substantially similar to the transaction here involved are not at all uncommon. The instant one was not questioned nor suspicion cast upon it until the principals in it were dead, and its incidents a matter of doubtful memory and impression. With no confidential relation implied by law or proven in fact, the Justice sitting in equity, upon the evidence before him,

was not clearly wrong in finding that the plaintiff was not entitled to the relief prayed for in her Bill.

The Appeal is dismissed and the Decree below is affirmed with costs.

*Appeal dismissed.*
*Decree below affirmed with costs.*